737 So.2d 1170 (1999)
SPECIALTY EMPLOYEE LEASING and The Zenith Insurance Company, Appellants,
v.
William DAVIS, Hartley Brothers Construction And Sterling Cooke Insurance Services, Inc., Appellees.
No. 98-3725.
District Court of Appeal of Florida, First District.
July 7, 1999.
Susan J. Anger of Lore & Anger, P.A., Winter Park, for Appellants.
Dawn M. Ikerd, of Ikerd & Matthews, P.A., Maitland, for Appellant Specialty Employee Leasing, Inc.
David I. Rickey of Morgan, Colling & Gilbert, P.A., Orlando, for Appellee Davis.
Holly A. Davis and Betty D. Marion of McCarty, Keeter, Marion, Davis & O'Connor, P.A., Ocala, for Appellees Hartley *1171 Brothers Construction and Sterling Cooke Insurance Services, Inc.
WEBSTER, J.
In this workers' compensation case, Specialty Employee Leasing (Specialty) and its insurer, The Zenith Insurance Company (Zenith), seek review of an order directing that they provide any benefits to which William Davis might be entitled. They argue that there is no competent, substantial evidence to support the findings that Specialty was Davis' employer at the time of the accident, and that, therefore, Zenith provided workers' compensation insurance for Davis. We agree. Moreover, on the evidence presented, it is clear that Hartley Brothers Construction (Hartley) is responsible for any workers' compensation benefits to which Davis might be entitled. Accordingly, we reverse, and remand.
The evidence presented establishes that, in November 1996, Davis was working for Roland Davidson, a construction subcontractor. Davidson had an employee leasing agreement with Specialty, pursuant to which Specialty agreed to lease employees to Davidson, and to provide employee-related services, including paying workers' compensation premiums. Davis submitted an employment application to Specialty on November 25, 1996. However, he never received a paycheck from Specialty. Rather, he was paid in cash by Davidson.
On December 9, 1996, Davidson and Davis met with the president of Specialty. They discussed Davis resigning from Specialty, starting his own subcontracting business, and signing up as a client company of Specialty. That day, Specialty sent Davis a letter telling him that his employment with Specialty had been terminated, effective immediately, because of his voluntary resignation. On December 13, 1996, Davis signed and mailed to the Division of Workers' Compensation a notice of election to be exempt from the workers' compensation law.
On January 7, 1997, Davis was injured in a work-related accident while working for Davidson on a job for which Hartley was the general contractor. From December 9, 1996, until the date of the accident, Davis worked continuously for Davidson, considering himself an employee of Davidson and receiving his pay directly from Davidson, who was a subcontractor on the Hartley job site. Davis had spoken to a principal of Hartley a couple of weeks before the accident about the possibility of working directly for Hartley, as a subcontractor. He was told that Hartley could not hire him as long as he was employed by Davidson and that, before Hartley would consider hiring him, he would need to have workers' compensation and liability insurance. On the date of the accident, Hartley believed that Davis was working for Davidson, and that he had workers' compensation coverage "through" Specialty.
On December 30, 1996, a principal of Hartley had received a certificate of insurance which reflected that Zenith provided workers' compensation coverage to its insured, Specialty, and that "Roland Davidson [wa]s under agreement with Specialty." He testified that he understood from Davidson that Davidson "ran all of his employees through ... Specialty." Therefore, when he received the certificate of insurance, he believed that Davis had workers' compensation coverage "through" Specialty and Zenith. He never received from Davis a notice of election to be exempt from the workers' compensation law. He said that he would not have allowed Davis to work on the site had he known that Davis did not have workers' compensation coverage. He also testified that Hartley usually checked with Specialty to determine which employees were employed (and, therefore, afforded workers' compensation coverage) by Specialty, but that he could not say whether that had been done in this case.
Davis subsequently filed two petitions seeking, among other things, a determination of compensability of his claim. The first was filed against Hartley and its carrier, Sterling Cooke Insurance Services; and the second was filed against Specialty and Zenith. Hartley and its insurer responded *1172 that no benefits were due from any source because Davis had filed a notice of election to be exempt from the workers' compensation law before the accident but that, if benefits were due, they were the responsibility of Specialty and Zenith because Specialty either was Davis' employer or was estopped from denying an employment relationship by virtue of the certificate of insurance that had been provided. Specialty and Zenith responded that they had no responsibility for any benefits because, at the time of the accident, Davis was either an employee of Davidson, who was an uninsured subcontractor of Hartley, or himself an uninsured subcontractor of Hartley.
Following a hearing, the judge of compensation claims entered an order in which he found that Davis was not an independent contractor at the time of the accident; at the time of the accident, Davis was an employee of Davidson, who had consistently paid him directly; prior to the accident, Specialty had forwarded to Hartley a certificate of insurance "indicating that ... Zenith was the carrier for ... Davidson's company"; and "Specialty ... indicated to Hartley ... that there was workers' compensation coverage in effect for ... Davis" while he was working on the Hartley job. Based on these findings, the judge of compensation claims concluded that Davis "should have been considered an employee of Specialty" at the time of the accident, and that Specialty and Zenith were estopped from denying that an employment relationship existed, obligating them to provide workers' compensation benefits to Davis. This appeal follows.
We agree with the finding that Davis was not an independent contractor on the date of the accident. All of the evidence establishes, without dispute, that Davis was employed by Davidson. However, given the undisputed evidence that any relationship Davis might have had with Specialty had been terminated several weeks before the accident, and that Davis was employed by Davidson (who paid him directly) on the date of the accident, we conclude that no competent, substantial evidence exists to support the conclusion that Davis "should have been considered an employee of Specialty" on that date.
The judge of compensation claims also concluded that, even if Davis was not actually an employee of Specialty on the date of the accident, Specialty and Zenith were estopped from denying that an employment relationship existed because Specialty had previously forwarded to Hartley a certificate of insurance indicating "that there was workers' compensation coverage in effect for ... Davis" while he was working on the site and "that ... Zenith was the carrier for ... Davidson's company." We have been unable to find in the record any competent, substantial evidence to support either of these findings. The certificate of insurance establishes merely that Zenith had in effect a policy of workers' compensation insurance naming Specialty as the insured, and that "Davidson [wa]s under agreement with Specialty." There is nothing on the certificate to suggest that any of Davidson's employees working on the Hartley job were covered by that insurance, and there is certainly nothing to suggest that all of his employees were covered. Similarly, there is no evidence in the record to suggest that any representative of either Specialty or Zenith ever told Hartley that Davis was an employee of Specialty or that he was covered by workers' compensation insurance. On the contrary, one of Hartley's principals testified that, although Hartley usually checked to determine who was employed by whom on its job sites, he did not know whether that had occurred in this case.
The elements necessary to establish an equitable estoppel are "1) a representation as to a material fact that is contrary to a later-asserted position; 2) reliance on that representation; and 3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon." Department of Revenue v. Anderson, 403 So.2d 397, 400 (Fla.1981). Accord La Croix *1173 Constr. Co. v. Bush, 471 So.2d 134, 136 (Fla. 1st DCA 1985) (holding that the evidence supported the conclusion in a workers' compensation case that the appellant was precluded by equitable estoppel from denying that it was the claimant's employer). Because there is no competent, substantial evidence from which one might find that Specialty or Zenith ever represented to Hartley that Davis either was employed by Specialty or had workers' compensation coverage "through" Specialty or Zenith, the first element necessary to establish an equitable estoppel was not proven. Accordingly, the judge of compensation claims committed reversible error when he held to the contrary.
Based on the foregoing discussion, we conclude that Specialty and Zenith are not obliged to provide any benefits to Davis. Davis argues that, if Specialty and Zenith are not responsible for benefits, Hartley is, pursuant to section 440.10(1)(b), Florida Statutes (1995), because he was employed by Davidson and Davidson (who was Hartley's subcontractor) did not obtain workers' compensation insurance covering him. Hartley responds that Davis is not entitled to any benefits because, at the time of the accident, Davis was a sole proprietor engaged in the construction industry who had filed a notice with the Division of Workers' Compensation pursuant to section 440.05, Florida Statutes (1995), electing to be exempt from the provisions of chapter 440.
Section 440.10(1)(b), Florida Statutes (1995), makes a contractor liable for the payment of compensation benefits to all of the employees of each of its subcontractors, unless the subcontractor has obtained workers' compensation insurance covering the employees. Because it is undisputed that Davidson did not obtain workers' compensation insurance covering Davis, it would appear that Hartley is liable for any benefits to which Davis might be entitled. However, Hartley contends that it is not liable because of the notice of election to be exempt from the workers' compensation law that Davis had mailed to the Division of Workers' Compensation on December 13, 1996.
Section 440.05, Florida Statutes (1995), upon which Hartley relies, provides, in pertinent part, that:
(3) Each sole proprietor, partner, or officer of a corporation who is actively engaged in the construction industry and who elects an exemption from this chapter or who, after electing such exemption, revokes that exemption, must mail a written notice to such effect to the division on a form prescribed by the division.... Upon receipt of the notice of the election to be exempt and a determination that the notice meets the requirements of this subsection, the division shall issue a certification of the election to the sole proprietor, partner, or officer....
(4) A notice given under ... subsection (3) is not effective until 30 days after the date it is mailed to the division in Tallahassee. However, if an accident or occupational disease occurs less than 30 days after the effective date of the insurance policy under which the payment of compensation is secured or the date the employer qualified as a self-insurer, such notice is effective as of 12:01 a.m. of the day following the date it is mailed to the division in Tallahassee.
The first sentence of subsection (4) states in clear and apparently unambiguous language that "[a] notice given under ... subsection (3) is not effective until 30 days after the date it is mailed to the division in Tallahassee." It is undisputed that the notice of election to be exempt from the workers' compensation law ("[a] notice given under ... subsection (3)") was mailed on December 13, 1996, and Davis was injured on January 7, 1997. Because less than 30 days had passed between the date on which the notice had been mailed to the Division of Workers' Compensation and the date of the accident, it would appear that the election to be exempt had not yet become effective on the date of the accident. *1174 However, Hartley argues that, when read in conjunction with the second sentence of subsection (4), it becomes apparent that the 30-day waiting period set out in the first sentence is intended to apply only when a notice of revocation of a previously filed election to be exempt is involved. We disagree. Given the clear language of the first sentence, we believe it far more reasonable to conclude that the intent of the second sentence is to exempt from the 30-day waiting period generally applicable to all notices identified in the preceding subsection only those notices of revocation of a previously filed election to be exempt mailed by an individual who is injured less than 30 days after the notice was mailed. Such a reading is consistent with the apparent intent of the sentence to afford coverage in situations where, otherwise, there would be none. Such a reading is also consistent with that of the Division of Workers' Compensation. See Fla. Admin. Code R. 38F-6.012 (as amended Feb. 15, 1994). Because the notice of election to be exempt from the workers' compensation law had not yet become effective on the date of Davis' accident, we conclude that Hartley is liable for any benefits to which Davis might be entitled, pursuant to section 440.10(1)(b), Florida Statutes (1995).
In summary, we hold (1) that the judge of workers' compensation claims erroneously concluded that Specialty and Zenith were responsible for any benefits to which Davis might be entitled; and (2) that Hartley is responsible for any benefits to which Davis might be entitled. Accordingly, the order is reversed, and the case is remanded for further proceedings consistent with this opinion.
REVERSED and REMANDED, with directions.
ERVIN and LAWRENCE, JJ., CONCUR.