975 So.2d 1184 (2008)
CRUM SERVICES and Frank Winston Crum Insurance, Appellants,
v.
Ruben Alberto Soto LOPEZ, Appellee.
No. 1D07-410.
District Court of Appeal of Florida, First District.
March 6, 2008.
Juliana L. Curtis of Dixon & Associates, Tampa, for Appellants.
Kristin J. Longberry of Alvarez, Sambol, Winthrop & Madson, P.A., Orlando, for Amicus Curiae Florida Association of Professional Employer Organizations.
Jane-Robin Wender of Wender & Associates, P.A., Lake Worth, for Appellee.
THOMAS, J.
This appeal involves a dispute between an injured worker ("Claimant"), his employer, Porto & Garcia Roofing ("P & G Roofing"), and P & G Roofing's employee leasing company, Crum Services ("Crum"). Claimant was injured while working on a roofing project for P & G Roofing, and we are asked to determine which entity is *1185 legally responsible for compensating Claimant for his injuries. We disagree with the findings of the Judge of Compensation Claims (JCC) that Claimant was an employee of Crum, and reverse.
Crum, a professional employer organization, provides leased employees to its clients. Specifically, Crum enters into contractual agreements to provide payroll services and workers' compensation benefits for the employees it leases to its clients.
Claimant sought compensation for his injury. At trial, evidence was presented that Daniel Del Sol offered Claimant a job on the spot with P & G Roofing to perform manual labor on a roofing job at the rate of $80 per day. Claimant never filled out any paperwork for Crum, P & G Roofing, or any other entity. On May 26, 2005, after working for three days, Claimant suffered a broken ankle when the ladder on which he was standing slipped and fell. According to Claimant, Mr. Del Sol took him to the doctor and a follow-up orthopedist appointment, paid for both appointments, and promised Claimant he would be paid $200 per week for missed time from work. Claimant was unable to return to steady work until September 2005. The only remuneration Claimant received was $175 for his three days of work, paid directly by Mr. Del Sol.
Testimony from both Mr. Del Sol and a P & G Roofing representative[1] established that Mr. Del Sol was an employee of P & G Roofing at the time of the accident, and that P & G Roofing had pulled the permits for the job. Although Mr. Del Sol testified that he had authority to hire workers on behalf of P & G Roofing, the P & G Roofing representative acknowledged that any employee hired on its behalf is required to fill out certain documents in order to be considered an employee of Crum. In fact, the contractual agreement entered into between P & G Roofing and Crum specifically states that Crum's services will be provided to any employee of P & G Roofing who qualifies as a "Leased Employee." In order to qualify as a Leased Employee, the agreement states that an employee must complete an employment application, W-4 withholding form, and Form I-9, and that these forms "must be delivered to us [Crum] before the employee commences employment." Furthermore, the agreement specifically provides that P & G Roofing "assume[s] full responsibility for workers' compensation claims of other Parties hired by or working for you, whether as an employee, independent contractor, or in any other status."
After hearing the testimony of the parties, the JCC found that P & G Roofing, as the general contractor on the worksite, is statutorily responsible for providing workers' compensation coverage to Claimant. The JCC further found, however, that regardless of the specific language in the Lease Agreement, Crum agreed to "step into the shoes" of P & G Roofing and provide workers' compensation coverage for all of P & G Roofing's employees; thus, Crum is the proper carrier to provide workers' compensation coverage to Claimant. Accordingly, the JCC ordered Crum to provide a primary care physician, temporary partial disability benefits, and attorneys' fees. We respectfully disagree.
There is no question that a general contractor is responsible for providing workers' compensation benefits to any employee of an uninsured subcontractor working *1186 on its job site. See § 440.10(1)(b), Fla. Stat. (2004). However, that is not the issue before us. The question here is whether a service leasing company is responsible for providing workers' compensation benefits to all employees whom a contractor hires for a particular job site, or only those employees who meet the requirements agreed to by the parties.
Although we have not specifically addressed this issue, Specialty Employee Leasing v. Davis, 737 So.2d 1170 (Fla. 1st DCA 1999), offers guidance. In Davis, we held that an employee leasing company is not responsible for a claimant's workers' compensation coverage where there is no evidence that the claimant was an employee of the leasing company at the time of the accident. Id. at 1172. Although factually distinguishable, we adopt the reasoning of Davis. Because Crum never had an employer-employee relationship with Claimant under the terms of the Lease Agreement, Claimant's workers' compensation coverage falls to P & G Roofing rather than Crum. This view is bolstered by the plain language of the Lease Agreement: "You [P & G Roofing] assume full responsibility for workers' compensation claims of other Parties hired by or working for you, whether as an employee, independent contractor, or in any other status." It is clear that P & G Roofing is responsible for workers' compensation coverage for those employees at the job site who do not meet the requirements of a "leased employee" under the Lease Agreement.
Furthermore, we reject the JCC's contention that Claimant is a "statutory employee" of Crum under section 440.10(1)(b), Florida Statutes (2005). Under this provision, all of the employees of a contractor or subcontractor
shall be deemed to be employed in one and the same business or establishment, and the contractor shall be liable for, and shall secure, the payment of compensation to all such employees, except to employees of a subcontractor who has secured such payment.
§ 440.10(1)(b), Fla. Stat. (2005). This section is designed to ensure that employees engaged in the same contract work are covered by workers' compensation, regardless of whether they are employees of the general contractor or its subcontractor. Andrews v. Drywall Enters., 569 So.2d 821, 823 (Fla. 1st DCA 1990). In other words, if Crum is deemed to be the "contractor" here and P & G Roofing the "subcontractor," then Crum is responsible for providing workers' compensation coverage for all of P & G Roofing's employees.
The important distinction here, however, is that
"to be regarded as a `contractor' . . ., the company's primary obligation in performing a job or providing a service must arise out of a contract. Furthermore, the `primary obligation' refers to an obligation under the prime contract between the contractor and a third party, not to any agreement between the contractor and subcontractor."
See Miami Herald Publ'g v. Hatch, 617 So.2d 380, 383 (Fla. 1st DCA 1993) (emphasis in original) (internal quotations and citations omitted). Here, Crum has no obligation to a third party; its only obligation is to provide the contracted services to P & G Roofing. It is P & G Roofing that has an agreement with an outside party to complete the roofing project, and it is clearly the contractor in this relationship. Because section 440(1)(b) requires a contractor-subcontractor relationship, no "statutory employment" attaches.
For the same reason, we distinguish this case from Gator Freightways, Inc. v. Roberts, 550 So.2d 1117 (Fla.1989). The *1187 supreme court agreed with this court's opinion that "the legislative intent was to `insure that a person performing a contractor's work, even as an employee of a subcontractor, shall be entitled to workers' compensation protection with the primary employer if the subcontractor fails to provide such coverage.'" Id. at 1119 (citing Roberts v. Gator Freightways, Inc., 538 So.2d 55, 60 (Fla. 1st DCA 1989)). In essence, Roberts holds that a general contractor cannot contract around its obligation to provide workers' compensation coverage to those employees working on its contractual undertaking. That is not the case here. Under our analysis, the general contractor (P & G Roofing) is responsible for providing workers' compensation coverage for all employees at its site. The employee leasing agency is not the general contractor, and is only responsible for providing coverage to those employees whom it agrees to cover.
We reject Claimant's policy argument that this decision creates a "gap" in coverage for a contractor's employees who do not qualify for workers' compensation coverage under the contractor's employee leasing agreement. First, any such gap would have been closed here had P & G Roofing followed the agreed-upon employment procedures. Had the proper paperwork been completed, Claimant would have been a leased employee of Crum, and Crum would have been obligated to provide workers' compensation coverage under the Lease Agreement. Second, as mentioned above, the contractor is still required to provide coverage for all employees working on its job site. Third, if a contractor does not have adequate coverage, the Legislature has provided specific remedies for an injured worker. For example, section 440.11(1)(a), Florida Statutes (2004), allows Claimant to bring a claim against P & G Roofing under either workers' compensation law or in tort. In a tort action, the Legislature has eliminated an employer's ability to raise the defenses of negligence of a fellow servant, assumption of the risk, or comparative negligence. § 440.06, Fla. Stat. (2004). Although it appears the Legislature has already addressed the present situation, it is within the province of the Legislature to determine if further remedies are necessary.
Because we agree with Crum that the JCC erred in finding that Claimant qualified as an employee of Crum, we REVERSE and REMAND for entry of an order consistent with this opinion.
LEWIS, J., concurs; VAN NORTWICK, J., specially concurring with written opinion.
VAN NORTWICK, J., specially concurring.
I concur with the majority opinion that the JCC erred in ruling that under the facts of this case appellee was an employee of Crum Services, an employee leasing company. See generally, Hazealeferiou v. Labor Ready, 947 So.2d 599, 602-605 (Fla. 1st DCA 2007). I write to express my concern that the instant case does demonstrate that, under the employee leasing arrangement common in Florida, workers' compensation coverage "gaps" exist which allow claimants such as appellee to "fall through" the system.
Here, claimant Lopez was working on a construction site for which workers' compensation coverage was provided through an employee leasing contract between Lopez's employer, P & G Roofing, and Crum. As the majority opinion explains, however, because his employer failed to provide notice to Crum as required by the employee leasing contract, appellee is without workers' compensation coverage for his employment injury. Further, it is unrealistic to expect that a civil action against P & G *1188 Roofing will provide appellee with a viable remedy. The record reflects that P & G has failed to appear in this proceeding and, like many small subcontractors, P & G is very likely "judgment proof." As a result, under these circumstances either appellee is left without medical care for his injury or the Florida taxpayers will bear the cost of his care. I urge the legislature to give consideration to statutory amendments that will better assure seamless workers' compensation coverage under employee leasing arrangements.
NOTES
[1] Despite being legally noticed and subpoenaed, P & G Roofing has not participated in this lawsuit in any way, resulting in the JCC certifying contempt proceedings to the circuit court. The evidence in this case comes from the deposition of a P & G Roofing representative in an unrelated case that was admitted into evidence.